CHESS & WYMOND COMPANY *v.* WALLIS.

Opinion delivered April 29, 1918.

1. MASTER AND SERVANT—INJURY—DUTY TO WARN.—In an action for damages for personal injuries, *held* an instruction upon the defendant's duty to warn the plaintiff was proper.

2. MASTER AND SERVANT—OBVIOUS DANGER—DUTY TO WARN SERVANT. —A master is presumed to know the hazards of the employment, and his servant has the right to rely upon assurances of safety given him, unless the danger is so open and obvious that its existence is both known to and appreciated by the servant.

3. TRIAL—ARGUMENT—REMOVAL OF PREJUDICE.—In a personal injury action it was improper for plaintiff's counsel to state to the jury in argument that plaintiff was a poor man and that counsel had paid all the costs of the action and had paid out a large sum in prosecuting the suit, but *held,* an admonition by the court to the jury to disregard counsel's remarks removed any prejudice raised thereby.

4. TRIAL—ARGUMENT—AMOUNT OF VERDICT.—In a personal injury action against a corporation, plaintiff's counsel in argument said that defendant "is a large corporation and worth lots of money, and if you are to give us a judgment they would not pay it off if it were only ten cents, but would appeal to the Supreme Court of the State and keep it in court as long as possible," *held,* these remarks were calculated only to influence the jury to increase the size of their verdict, but, as the verdict was not excessive, the remarks were not prejudicial.

5. VERDICT—QUOTIENT VERDICT—IMPEACHMENT.—Testimony of a juror is inadmissible to impeach a verdict in which he participated, on the ground that the same was a quotient verdict.

Appeal from Boone Circuit Court; *John I. Worthington,* Judge; affirmed.

*Brundidge & Neelly,* for appellant; *Ben F. Williamson* and *J. M. Shinn,* of counsel.

1. Defendant's peremptory instruction should have been given. There was simply an accident which was unavoidable and not to have been foreseen by defendant or its employees. There was no negligence proven as the proximate cause of the accident, nor could it have been foreseen. 86 Ark. 289; 108 *Id.* 483; 91 *Id.* 260; 113 *Id.* 60.

2.   It was error to give plaintiff's instruction No. 1. It was objected to generally and specifically. There was no duty to warn as the plaintiff was experienced and the danger was as obvious to him as to the foreman. 97 Ark. 486; 93 *Id.* 153; 96 *Id.* 500; 107 *Id.* 341.

3.   The cause should be reversed for the improper statements and argument of counsel.   103 Ark. 356; 120 *Id.* 494; 100 *Id.* 437; 70 *Id.* 427; 58 *Id.* 368; 56 *Id.* 625.

4.   The verdict was reached by lot.   29 Cyc. 812; 39 Cal. 485; 6 Idaho 231; 160 Mass. 395; 34 Pac. 185.

5.   Appellee assumed the risk.   96 Ark. 390.

6.   There is error in the other instructions given and refused.

*E. G. Mitchell,* for appellee.

1.   Appellee was an inexperienced minor, while the foreman was experienced.   The attention of the foreman was called to the danger, and yet he ordered appellee to go under that dangerous limb to work and he obeyed, not appreciating the danger.   A clear case of liability is shown and the verdict is very small.   53 Ark. 117; 87 *Id.* 471; 95 *Id.* 278. There is no error in the instruction, and the verdict is fully sustained by the evidence.

2.   The verdict was not reached by lot.   Kirby & Castle's Dig., § 2594; 67 Ark. 262; 66 *Id.* 264.

3.   The remarks of attorney for appellee were not prejudicial.   The jury were properly admonished by the court and all prejudice removed.   This is shown by the smallness of the verdict.   There are no reversible errors.

SMITH, J.   On May 27, 1914, while appellee was engaged in cutting stave bolts for the appellant company, he was injured by a limb falling from a tree which struck him on the head.   He sustained a very serious injury, and brought this suit through his father as next friend to recover damages to compensate the injury.   On appellee's behalf the testimony was to the effect that he was directed by his foreman, a man named Norman, to saw a log lying under the hanging limb, when appellee called attention to the limb, but was as-

sured by Norman that there was no danger of the limb falling. Appellee commenced the task to which he was assigned and while so employed the limb fell upon him. Norman denied having seen the limb or having given any assurance as to the absence of danger. Appellee was nearly grown at the time of his injury and had had several years' experience working in timber, notwithstanding his youth, but he testified that he relied upon the assurance of Norman that the limb would not fall, and that it was only because of this assurance that he commenced working under the limb.

(1) Over appellant's objection the court gave the following instruction:

"1. If the defendant, by its authorized agent, ordered plaintiff into a place of danger, to aid in cutting up a tree, and plaintiff by reason of youth and inexperience did not know of and appreciate the danger of the situation and defendant knew this, or ought in the exercise of ordinary care on its part to have known it, then it was the defendant's duty to warn him of this danger so that, as far as might be by proper care on its part, plaintiff could perform his duty in safety to himself; if the defendant failed in this respect, and plaintiff, while exercising due care for his own safety, by such failure, suffered the injuries sued for, then plaintiff should recover in this action."

To the giving of this instruction appellant at the time objected generally, and further objected specifically for the reason that under the law and the evidence as testified to by appellee himself the company did not owe to him any duty of warning as to his own safety because his experience in such employment showed there was no necessity for warning him.

In passing upon the objection made to this instruction it is proper to say that the court gave at appellant's request a number of instructions declaring the law as contended for by it; in fact, the court gave all the instructions requested by appellant. And while it is true that appellee was not an inexperienced timber man, he

was still a young man, and we think the record presents a question of fact which should have been submitted to the jury, and that is, whether appellee had the right to rely on Norman's assurance of the safety of the place to which he was assigned to work. The instruction is not happily framed to present the exact issue in the case, but we think it was not erroneous when read in the light of and in connection with the other instructions. No objection was made to the instruction other than the one just indicated, therefore no other will be considered now. The warning of which the instruction speaks may not have enabled appellee to perform his work any more safely, but appellee says the assurance of safety induced him to take the place assigned to him.

(2) It is argued that the danger was open and obvious and that Norman could not have had any more knowledge of the danger than appellee himself had, for according to appellee's testimony the presence of the suspended limb was known alike to both himself and Norman. But it is just here that we think the jury question arises. The master is presumed to know the hazards of the employment and the servant has the right to rely on the assurance of safety, unless the danger is so open and obvious that its existence is both known to and appreciated by the servant. The rule is stated in 4 Labatt on Master and Servant (2 ed.), page 3965, as follows:

"But it has been held that the assurance of safety given by the master may be of such a character as to take away all question of assumption of risk even if the risk is known to the servant. The same effect is reached in a number of cases which hold that the servant may recover if he is injured while relying upon an assurance of safety unless the danger was so great and imminent that a reasonably prudent man would not have incurred it."

We can not say that the jury did not have the right to take into account appellee's age and experience as contrasted with that of his foreman and to find therefrom that appellee had the right to rely upon the assurance

given and that he was not guilty of contributory negligence and did not assume the risk.

Exceptions were saved to two portions of the argument of counsel for appellee before the jury. In his closing argument counsel made the following statement:

(3) "Gentlemen of the jury, my client, Cleat Wallis, is a very poor man, and I have been having to pay out costs in this case myself, and I have spent at least $300 of my own money in prosecuting this suit."

It is recited in the bill of exceptions that this statement was made in response to certain statements of counsel for appellant; but the objection made to the argument was sustained, and the court admonished the jury to disregard it. The statement of counsel was, of course, an improper one, but we think under the circumstances that it was not so prejudicial as not to have been cured by the admonition of the court concerning it.

(4) Again in his argument counsel for appellee stated:

"Gentlemen of the jury, the defendant, Chess & Wymond Company, is a large corporation and worth lots of money, and if you are to give us a judgment they would not pay it off if it were only ten cents, but would appeal to the Supreme Court of the State and keep it in court as long as possible."

Objection was also made to this argument, and the court was requested to exclude it and admonish the jury to disregard it. But the court declined to rebuke counsel or to exclude the argument from the jury. It is apparent that this argument, too, was an improper one, but the majority of the court are of the opinion that its only effect was to urge the jury to return a larger verdict than would otherwise have been done and that it was not an argument calculated to induce the jury to make a finding of liability which would not otherwise have been made, and that, inasmuch as no complaint has been made or can be made against the verdict as having been returned for an excessive amount, it therefore affirma-

tively appears that no prejudice resulted from the argument. *St. L., I. M. & S. Ry. Co.* v. *Brown,* 100 Ark. 107.

(5)   It is finally insisted that the verdict in the case was arrived at by lot.   And, as tending to support that contention, the testimony of a juror was heard from which it appears that the verdict was not arrived at by lot, but was a quotient verdict, which had been arrived at by adding together the amounts for which the different jurors thought the verdict should be and of dividing that sum by twelve.   In the case of *Speer* v. *State,* 130 Ark. 457, we expressly held that a verdict arrived at in this manner was a quotient verdict and not one determined by lot, and that such a verdict could not, therefore, be impeached by the jury.   It is true the Speer case, *supra,* was a criminal case, while the instant case is a civil case; but the right of a juror thus to impeach his verdict was raised in the case of *Ward* v. *Blackwood,* 48 Ark. 408, which was also a civil case.   There the affidavit of the juror would have shown that the verdict was arrived at by lot; but the court held the testimony of the juror showing that fact to be inadmissible for that purpose, and in doing so Judge BATTLE, speaking for the court, said:

"In *Pleasants* v. *Heard,* 15 Ark. 407, the affidavit of Strawn, one of the jurors, was filed to show that the jury agreed that each member thereof should write down the amount that he was in favor of, and that these several amounts should be added up and their sum divided by twelve, the number of the jurors, and that the quotient should be taken and written as the amount of their verdict, which was accordingly done, and the verdict so arrived at was returned into court as the verdict of the jury.   Chief Justice ENGLISH, in delivering the opinion of the court, said:  'Though there are some conflicting cases, we think it may be safely decided, upon authority, and for many good reasons, that the affidavit of the juror, Strawn, was not admissible in this case to impeach the verdict rendered by him for the cause stated in the affidavit.'   Thompson & Merriam on Jury Trials, § 414.

"The rule laid down in *Pleasants* v. *Heard* has not been changed or repealed in civil cases, but on the contrary, in such cases remains in full force."

Judgment affirmed.